## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ANTTWAN RICHEY,

               Petitioner,                             Case No. 05-CV-74073
                                                  Honorable Gerald E. Rosen

v.

JAN TROMBLEY,

               Respondent.
_____/

## OPINION AND ORDER DENYING PETITIONER'S
## PETITION FOR WRIT OF HABEAS CORPUS

On October 25, 2005, Petitioner Anttwan Richey, a state inmate currently incarcerated in the Kinross Correctional Facility in Kincheloe, Michigan, filed a *pro se* petition for a writ of habeas corpus pursuant to U.S.C. § 2254, asserting that he is being held in violation of his federal constitutional rights. On April 14, 1999, Petitioner was convicted, by a jury, of first-degree premeditated murder, MICH.COMP.LAWS § 750.316, and possession of a firearm during the commission of a felony, MICH.COMP.LAWS § 750.227b. He was sentenced, on May 25, 1999, by the Wayne County, Michigan, Circuit Court to life imprisonment without the possibility of parole for the first-degree-premeditated-murder conviction, and two years consecutive imprisonment for the felony-firearm conviction. In his pleadings, Petitioner asserts that (1) the trial court erroneously allowed the prosecutor to question Jimavis Hatchett, who was with Petitioner at the time of the alleged murder, about a statement she gave to the police prior to trial, and allowed the prosecutor to read excerpts of that statement into the record as substantive evidence, and, (2) his trial and appellate counsel were ineffective. Respondent filed its answer to

the petition on May 23, 2006, and filed the required Rule (5) materials on June 13, 2006.  For the

reasons stated below, the Court denies Petitioner's petition.

I.

This case arises out of the shooting death of Darryl Turner in April 1995.  The

prosecutor's theory of the case was as follows.  Petitioner and Jimavis Hatchett were driving in

the area of the Hayes Troester Market in Detroit, Michigan, where Petitioner saw Turner using a

pay telephone.  Petitioner told Ms. Hatchett, who was driving the car, to stop the car.  Allegedly,

Petitioner then got out of the car and shot Turner, as revenge for a prior incident that had

occurred between them.  Petitioner's defense was that none of the eyewitnesses could identify

him as the alleged shooter, and the descriptions of the shooter, given by the eyewitnesses, varied

greatly.  However, Ms. Hatchett gave a statement to the police prior to trial.  At trial, the trial

court allowed the prosecutor to question her about that statement, and allowed the prosecutor to

read excerpts of that statement into the record as substantive evidence.

The jury trial in this case began on April 12, 1999, the Honorable Maggie W. Drake

presiding.  The first witness to testify was Debra Turner, the mother of the decedent in this case.

She testified that on April 6, 1995, Darryl, her seventeen-year-old son, came to her place of

employment to visit her and then left.  She said that was the last time that she saw him alive.

Later, on that same day, she identified his body at the Wayne County Medical Examiner's

Office.

Sergeant Debra Fair testified next.  She said that, while working plain-clothes patrol with

her partner Lawrence Porter, during a routine patrol of the schools in the area, she was flagged

down by a citizen, who informed her that an individual, who may have been shot, ran into a store

2

near Hayes.  Sergeant Fair said that they drove to the area but did not see anything.  According to Sergeant Fair's testimony, she then went into the store, where she saw Darryl Turner, lying face down on the floor, with apparent injuries to his back.  It was Sergeant Fair's testimony that she then proceeded to talk to several witnesses; Willie Anthony, Gerald Richardson, and Daryl Henderson, the individual that flagged her down.

Sergeant Lawrence Porter then testified.  It was his testimony that he was working with Sergeant Fair on the day in question when they received some information that an individual may have been shot near Hayes and Troester.  He said that, after receiving that information, they then went to the scene.  Sergeant Porter testified that he talked to several witnesses; Daryl Henderson, August Gabriel, Ramos McCrory, and Gerald Richardson.  As a result of those interviews, Sergeant Porter said they were able to get a description of the automobile, and the individual, who may have been involved in the shooting.  According to Sergeant Porter's testimony, he was then directed to the area of the telephone booth, where the alleged shooting took place.  There, he witnessed spent casings on the ground and several apparent bullet holes in the booth itself.

Officer Lori Stewart, the officer directed to the location to preserve the scene, was next to testify.  Officer Stewart testified that, when she arrived at the location, she found four casings and damage to the telephone booth.  Officer Stewart also talked to Alicia Turner, sister of the deceased.  Ms. Turner identified the victim of the shooting as her brother.

Daryl Henderson testified that, while working for the Detroit Board of Education, and visiting a nearby school, he, and his friend, bought lunch at the Hayes Troester Market, which was located near where the shooting took place.  Mr. Henderson testified that, after they

3

purchased their lunches and were seated in the car, he heard three or four gunshots being fired. He said that he and his friend immediately ducked. Neither saw the individual who did the shooting. However, Mr. Henderson testified that he observed an African-American male in the area, approximately five-feet-ten-inches tall, estimating his age to be about thirty, and wearing a leather jacket and black and white tennis shoes. It was Mr. Henderson's testimony that both he and his friend went into the store after the shooting and saw the deceased lying on the floor. Mr. Henderson testified that he was called to attend a lineup on June 15, 1995, which he did in fact attend, but that he failed to identify anyone, including the Petitioner, as the perpetrator.

Officer John Wolff, an evidence technician, testified that he was asked to go to the scene and photograph and prepare a sketch. Officer Wolff said that, while at the scene, he found four fired cartridge casings in front of the bus stop, which was located near the telephone booth.

Ramas McCrory, an installer for Ameritech Telephone Company, testified that, on the day in question, he was at a job assignment at an apartment complex located near the Hayes Troester Market. According to Mr. McCrory's testimony, he saw an African-American male walking around his vehicle, and, subsequently, while up on a telephone pole, he heard gunshots. Mr. McCrory said that, after he heard the gunshots, he saw the same African-American male coming back through the parking lot, heading to the rear of the market. Mr. McCrory said he saw the man get into the passenger side of a Buick Roadmaster, which then drove off. Mr. McCrory identified the proposed photograph exhibit of the vehicle. However, Mr. McCrory testified that he never saw the individual's face. He said he was asked to attend a lineup, which he did, but did not identify Petitioner as the perpetrator. Rather, he identified another individual in the lineup as the perpetrator.

4

Howard Camp testified that he owned the 1994 Buick Roadmaster.  He said that he allowed his girlfriend's daughter to drive the vehicle in or around April 1995.  His girlfriend's daughter's name was Jimavis Hatchett.

Jimavis Hatchett, who was twenty-years-old at the time of trial, testified that she was dating Petitioner in April 1995, and that on April 6, 1995, she was driving her mother's boyfriend's Buick, when she picked up Petitioner at his house.  According to Ms. Hatchett's testimony, she was going to drive him to the hospital because he had a terrible earache, but that first she drove him to the market on Troester to get some Tylenol for the earache.

During her testimony, Ms. Hatchett admitted telling the police in her June 15, 1995, statement to them, that, when she turned onto Troester, she saw a light-skinned person riding a bike that she knew from school.  In her statement to the police, Ms. Hatchett said that Petitioner also saw the person and commented on the fact that he knew him; "Anttwan saw him too and said that's the nigger who robbed me and almost killed me."  (Trial Tr. Vol. II, p. 68.)  Ms. Hatchett testified that when they got to the store, Petitioner exited the vehicle, but did not go down the alley.

However, in another portion of her statement to the police, Ms. Hatchett testified that Petitioner did indeed go down the alley and that she heard gunshots as she was turning the car around in that same alley.  It was Ms. Hatchett's testimony that, although she could not remember what Petitioner said when he got back into the car, she nevertheless admitted that she told the police in her statement that Petitioner said, "I knew I'd see that nigger again.  I got that nigger."  (Trial Tr. Vol. II, pp. 77-78.)  Ms. Hatchett also admitted that she told the police that a gun clip and bullet fell to the ground as Petitioner was getting out of the car to go to his mother's

house.

Nakish Hogan testified that, on April 6, 1995, she was talking on the phone with the

deceased.  It was her testimony that, as she was talking to him, she heard a loud noise that hurt

her ear.  She said that she then hung up the phone because she no longer heard him talking to

her.

Dr. Yung Chung, a forensic pathologist, working for the Assistant Medical Examiner in

Wayne County, Michigan, testified that he performed the autopsy on the deceased.  Dr. Chung

concluded that the cause of death was a single gunshot wound to the back, and that the manner of

death was homicide.

Petitioner did not testify.

The jury found Petitioner guilty as charged.

Subsequently, Petitioner, through appointed counsel, filed a first right of appeal in the

Michigan Court of Appeals, raising the following claims:

> I.    The trial court erroneously allowed the prosecutor to read
> into the record prior inconsistent statements allegedly made
> by witness Jimavis Hatchett to an investigating officer as
> "prior recollection recorded," thereby denying [Petitioner]
> due process pursuant to U.S. Const. Ams. V, XIV, and
> Mich. Const. 1963 Art. 1, § 17.

> II.   [Petitioner] was denied effective assistance of counsel
> when his trial lawyer failed to request a specific cautionary
> instruction with respect to the use of the prior statements of
> witness Hatchett, and by failure to request a cautionary
> "accomplice" instruction with respect to witness Hatchett's
> testimony, thereby denying [Petitioner] due process
> pursuant to U.S. Const. Ams. V, XIV, and Mich. Const.
> 1963, Art. 1, § 17.

> III.  The trial court committed reversible error when it failed to

6

*sua sponte* give a cautionary accomplice instruction with respect to witness Jimavis Hatchett, thereby denying [Petitioner] the right to due process pursuant to U.S. Const. Ams. V, XIV, and Mich. Const. 1963 Art. 1, § 17.

IV. The required exercise of multiple peremptory challenges for the examination of each newly seated juror was a variant of the "struck jury method" of jury selection, which deprived [Petitioner] the right to due process pursuant to U.S. Const. Ams. V, XIV, and Mich. Const. 1963, Art. 1, § 17.

Petitioner also filed a supplemental brief, *pro per*, in the Michigan Court of Appeals, raising the additional following claims:

I. [Petitioner] was denied effective assistance of counsel when his trial lawyer failed to bring out prior testimony of a key prosecution witness, Jimavis Hatchett. Also [Petitioner] was denied effective assistance of counsel when his trial lawyer failed to locate possible alibi witnesses and did not file any pretrial motions.

II. The trial court erroneously erred in allowing the prosecutor to impeach Ms. Hatchett with prior statement.

III. The prosecutor improperly used the witness Ms. Jimavis Hatchett's prior statement as substantive evidence and the trial court erred in failing to instruct the jury, *sua sponte*, on the limited use of impeachment evidence.

On November 16, 2001, the Michigan Court of Appeals issued an unpublished *per curiam* opinion affirming Petitioner's convictions. *People v. Anttwan Richey*, No. 221306, 2001 WL 1463705 (Mich.Ct.App. Nov. 16, 2001). Petitioner then filed a delayed application for leave to appeal that decision in the Michigan Supreme Court, raising the same claims as were raised in the Michigan Court of Appeals. On September 23, 2002, the Michigan Supreme Court denied Petitioner's delayed application for leave to appeal. *People v. Anttwan Richey*, 467 Mich. 873, 653 N.W.2d 401 (2002).

Thereafter, Petitioner filed a motion for relief from judgment in the trial court, raising the following claims:

> I.   [Petitioner] was unlawfully arrested without a warrant and denied a prompt arraignment, thereby denying [Petitioner] due process pursuant to U.S. Const. Ams. IV, V, XIV, and Mich. Const. 1963, Art. 1, § 17.
>
> II.  [Petitioner] was denied effective assistance of appellate counsel where the attorney did not properly raise a constitutional issue, thereby denying [Petitioner] due process pursuant to U.S. Const. Am. VI.
>
> III. [Petitioner] was denied effective assistance of counsel when his trial lawyer failed to challenge (1) the legality of {Petitioner's] arrest, (2) the undue delay in arraignment, and (3) suppression of evidence which was the fruit of an unlawful arrest; also [Petitioner] was denied effective assistance of counsel when the trial lawyer failed to challenge the accuracy of the Michigan Rules of Evidence, thereby denying [Petitioner] due process pursuant to U.S. Const. Ams. V, VI, XIV, and the Mich. Const. 1963, Art. 1, § 17.

The trial court denied the motion on the grounds that the ineffective assistance of trial counsel claim had been raised on direct appeal, and that Petitioner failed to show cause and prejudice with regard to the other claims.  Subsequently, Petitioner filed a delayed application for leave to appeal from the trial court's decision denying his motion for relief from judgment in the Michigan Court of Appeals.  On August 20, 2004, the Michigan Court of Appeals denied his application.  *People v. Anttwan Richey*, No. 254016 (Mich.Ct.App. Aug. 20, 2004).  Following, Petitioner filed an application for leave to appeal that decision in the Michigan Supreme Court, which was denied on May 31, 2005, because Petitioner failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D).  *People v. Anttwan Richey*, 472 Mich. 912, 696 N.W.2d 720 (2005).

8

On October 25, 2005, Petitioner filed the pending petition for a writ of habeas corpus,

presenting the following claims:

> I.      Petitioner was denied his right to a fair trial and due
> process under the United States Constitution Amendments,
> Sixth, and Fourteenth, and the Michigan Constitution 1963,
> Art. 1, § 17, when the trial court erroneously allowed the
> prosecutor to read into the record prior inconsistent
> statements allegedly made by witness Jimavis Hatchett to
> an investigating officer as "past recollections recorded."
>
> II.     Petitioner was denied his right to the effective assistance of
> trial counsel when his lawyer failed to challenge the
> legality of his arrest, unreasonable delay, and failed to seek
> suppression of testimonial evidence directly derived as a
> result of [Petitioner's] illegal arrest, and where trial counsel
> failed to challenge the accuracy of the Michigan Rules of
> Evidence, thereby denying Petitioner a fair trial and due
> process under the United States Constitution Amendments
> VI, XIV, and the Michigan Constitution 1963, Art. 1, § 17.
>
> III.     Petitioner was deprived of his right to the effective
> assistance of appellate counsel where the attorney failed to
> properly raise constitutional claims on direct appeal,
> thereby denying Petitioner due process pursuant to U.S.
> Const. Ams. VI, XIV, and this constitutes "good cause"
> and "actual prejudice" for any alleged procedural default.

II.

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs this

court's habeas corpus review of state-court decisions.  Specifically, 28 U.S.C. § 2254(d) states in

pertinent part:

> (d) An application for a writ of habeas corpus on behalf of a person
> in custody pursuant to the judgment of a State court shall not be
> granted with respect to any claim that was adjudicated on the
> merits in State court proceedings unless the adjudication of the
> claim–
>
> (1) resulted in a decision that was contrary to, or involved an

9

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings.

Under (d)(1), a federal court may grant a writ of habeas corpus under two different clauses, both of which provide two bases for relief.  Under the "contrary to" clause, a federal court may grant habeas relief if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has decided on a set of materially indistinguishable facts.  *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  The words "contrary to" should be construed to mean "diametrically different, opposite in character or nature, or mutually opposed."  *Id.*

Under the "unreasonable application" clause, a federal court may grant habeas relief if the state court identifies the correct governing legal principle from the Supreme Court's decisions but unreasonably applies that principle to the facts.  *Williams*, 529 U.S. at 407-08.  Relief is also available under this clause if the state-court decision either unreasonably extends or unreasonably refuses to extend a legal principle from Supreme Court precedent to a new context.  *Id.* at 407; *Arnett v. Jackson*, 393 F.3d 681, 686 (6th Cir. 2005).  The proper inquiry for the "unreasonable application" analysis is whether the state-court decision was "objectively unreasonable" and not simply erroneous or incorrect.  *Williams*, 529 U.S. at 407; *Lordi v. Ishee*, 384 F.3d 189, 195 (6th Cir. 2004).

In analyzing whether a state-court decision is "contrary to" or an "unreasonable application of" clearly established Supreme Court precedent, a federal court may only look to the holdings, as opposed to dicta, of the Supreme Court's decisions as of the time of the relevant

state-court decision.  *Lockyer v. Andrade*, 538 U.S. 63, 71 (2003); *Williams*, 529 U.S. at 412.

With that standard in mind, the Court proceeds to the merits of the petition for a writ of habeas corpus.

III.

A.

Petitioner first contends that the trial court committed error when it allowed the prosecutor to question Ms. Hatchett about a statement that she gave to the police prior to trial, and when it allowed the prosecutor to read excerpts of that statement into the record as substantive evidence.

Although Petitioner argues that the admission of certain excerpts of Ms. Hatchett's statement to the police should not have been admitted into evidence, he does not specifically allege that it was a violation his Confrontation Clause rights.  Rather, he states that he "was denied his right to a fair trial and due process under the United States Constitution Amendments, Sixth and Fourteenth" when the trial court allowed Ms. Hatchett's statements to be read into the record under "past recollections recorded."  The Court reads Petitioner's statement as a claim of violation of his Sixth Amendment rights to confront a witness against him, namely Ms. Hatchett.[1]  In response to Petitioner's Confrontation Clause claim, Respondent argues that the

---

[1]  As the Supreme Court stated in *Pointer v. Texas*, 380 U.S. 400 (1965):

> There are few subjects, perhaps, upon which this Court and other courts have been more nearly unanimous than in their expressions of belief that the right of confrontation and cross-examination is an essential and fundamental requirement for the kind of fair trial which is this country's constitutional goal.  Indeed, we have expressly declared that ***to deprive an accused of the right to cross-examine the witnesses against him is a denial of the***

11

claim is procedurally defaulted; Respondent argues that the claim must be denied because
"Petitioner did not present a claim of violation of the Confrontation Clause to the state courts."
(Respondent's Brief, p. 4.)

Procedural default is not a jurisdictional bar to a review of the merits of a habeas petition.
*See Howard v. Bouchard*, 405 F.3d 459, 476 (6th Cir. 2005) (citing *Trest v. Cain*, 522 U.S. 87,
89 (1997)).  Consequently, a federal court is not required to address a procedural default issue
before ruling against a habeas petitioner on the merits of his claims.  When a procedural default
issue presents a more complicated question and is unnecessary to the disposition of the case, a
court may proceed directly to the merits of the petitioner's claims in the interest of judicial
economy.  *See Lambrix v. Singleterry*, 520 U.S. 518, 525 (1997); *Hudson v. Jones*, 351 F.3d 212,
215-16 (6th Cir. 2003); *Johnson v. Warren*, 344 F. Supp. 2d 1081, 1089 (E.D. Mich. 2004); *see
also Strickler v. Green*, 527 U.S. 263, 282 (1999) (considering merits of habeas claims where
such inquiry mirrored procedural default cause and prejudice inquiry); *see also Cameron v.
Birkett*, 348 F. Supp. 2d 825, 836 (E.D. Mich. 2004) (same).

In the present case, resolving the procedural default issue will be more complex than
deciding the substantive claim on habeas review and will require some consideration of the merit
of that claim.  Accordingly, in the interests of judicial economy, the Court will address the merit
of Petitioner's Confrontation Clause claim without ruling on the procedural default issue.

### B.

Petitioner's Confrontation Clause claim presents an interesting question of post-

---

*Fourteenth Amendment's guarantee of due process of law.*

*Id.* at 405 (emphasis added).

*Crawford*[2] Sixth Amendment jurisprudence.

The Confrontation Clause of the Sixth Amendment states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him. . . ." U.S. Const. amend. VI.  Prior to *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004), Sixth Amendment review of the admissibility at trial of out-of-court statements against an accused was governed by *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531 (1980). Under *Roberts*, an out-of-court statement could be admitted if it was adequately reliable -- *i.e.*, if it fell under a hearsay exception and had "particularized guarantees of trustworthiness."  *Id.* at 66.[3]

Under *Crawford*, the Supreme Court reconceptualized the Confrontation Clause and affirmed a defendant's right to cross-examine those persons that accuse him of wrongdoing.  The Court held that "testimonial statements" offered into evidence from witnesses who are not present to testify must be excluded if offered against the accused to establish the truth of the matter asserted.  *Crawford*, 541 U.S. at 68.  The Court declined, however, to "spell out a comprehensive definition of 'testimonial,' " but stated that the term "applies at a minimum to

---

[2]  *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354 (2004).

[3]  *Ohio v. Roberts* was the controlling law at the time of Petitioner's trial.  In *Roberts*, the Supreme Court held

> [W]hen a hearsay declarant is not present for cross-examination at trial, the Confrontation Clause normally requires a showing that he is unavailable. Even then, his statement is admissible only if it bears adequate "indicia of reliability." Reliability can be inferred without more in a case where the evidence falls within a firmly rooted hearsay exception. In other cases, the evidence must be excluded, at least absent a showing of particularized guarantees of trustworthiness.

448 U.S. at 65.

13

prior testimony at a preliminary hearing, before a grand jury, or at a former trial; and to police interrogations." *Id.* The Court further commented that "[a]n accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not." *Id*.

In *Davis v. Washington*, 547 U.S. 813, 126 S.Ct. 2266 (2006), the Supreme Court further defined "testimonial" in a narrow set of circumstances. In *Davis* the Court held that statements are non-testimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. 126 S.Ct. at 2273-74. The statements made by Jimavis Hatchett to the police in this case appear to fall within this category of testimonial statements.

However, any *Crawford* confrontation argument in this case is foreclosed by *Whorton v. Bockting*, 549 U.S. 406, 127 S.Ct. 1173 (2007), in which the Supreme Court held that *Crawford* does not apply retroactively on habeas review. Even without *Whorton*, nevertheless, this Court finds that any confrontation argument fails because Ms. Hatchett was called to the stand and made available for cross-examination. *See Crawford*, 541 U.S. at 59 n. 9. ("[W]hen the declarant appears for cross-examination at trial, the Confrontation Clause places no constraints at all on the use of [her] prior testimonial statements.") (citing *Green*, 399 U.S. at 162). Simply put, "the Confrontation Clause is not violated by admitting a declarant's out-of-court statements, as long as the declarant is testifying as a witness and subject to full and effective

14

cross-examination." *Green*, 399 U.S. at 158.

Importantly, "the Confrontation Clause guarantees an opportunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985).  The Confrontation Clause includes no guarantee that every witness called by the prosecution will refrain from giving testimony that is marred by forgetfulness, confusion, or evasion.  To the contrary, the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose these infirmities through cross-examination, thereby calling to the attention of the factfinder the reasons for giving scant weight to the witness' testimony.  *Id*. at 21-22; *see also United States v. Owens*, 484 U.S. 554, 564 (1988) ("[T]he Confrontation Clause . . . is [not] violated by admission of an identification statement of a witness who is unable, because of a memory loss, to testify concerning the basis for the identification."); *United States v. Ghilarducci*, 480 F.3d 542, 548-49 (7th Cir. 2007) (applying *Owens* and *Fensterer*, court rejected defendant's *Crawford* argument that he was denied effective cross-examination due to the witness's lack of memory regarding his prior statement); *United States v. Bliss*, 188 Fed. Appx. 13 (2nd Cir. 2006) (holding that because witness was available for cross-examination at trial regarding his grand jury testimony there was no Confrontation Clause violation notwithstanding witness's loss of memory); *Creekmore v. Dist. Ct. of the Eighth Judicial Dist. of Montana*, 745 F.2d 1236, 1238 (9th Cir.1984); *United States v. Riley*, 657 F.2d 1377, 1386 (8th Cir.1981); *United States v. Payne*, 492 F.2d 449, 454 (4th Cir.1974).  As the cited authorities demonstrate, this was the law both pre- and post-*Crawford*.

The weight of authority establishes that there was no Confrontation Clause violation

15

on the facts in this case.  Ms. Hatchett did not claim a total loss of memory regarding the events.

Rather, she cooperated with defense counsel's questioning and succeeded in answering a great

number of questions.  Petitioner's counsel tested Ms. Hatchett's credibility, and the prosecutor

only read into evidence the portion of the statement regarding which he had already examined

her.  And, as to the most damaging portions of the statement, in which Ms. Hatchett said that

Petitioner said he had "got" the victim and killed the victim, Ms. Hatchett admitted making the

specific statements and that the specific statements were true when made.  Therefore, Petitioner's

opportunity to cross-examine Ms. Hatchett did not fall below constitutional standards.

The Michigan Court of Appeals, the last court to issue a reasoned decision in this case,

treated this issue as an evidentiary issue and found that the statement was not improperly

admitted.  It stated:

> The prosecutor first used the statement in his examination
> of Hatchett.  During the examination, Hatchett repeatedly stated
> that she did not recall that certain things happened.  When referred
> to her statement, she testified that reading her statement did not
> refresh her recollection, but that she had told the police the truth
> when she gave her statement.  When questioned regarding various
> specific portions of her statement, Hatchett sometimes admitted
> that she had made the specific statement to the police, and
> sometimes did not recall what she told the police.  She did,
> however, admit signing the statement.  [Footnote omitted.]
>
> After examination, the prosecutor moved to admit the
> statement under MRE 803(5) (past recollection recorded), which
> provides:
>
>> A memorandum or record concerning a
>> matter about which a witness once had knowledge
>> but now has insufficient recollection to enable the
>> witness to testify fully and accurately, shown to
>> have been made or adopted by the witness when the
>> matter was fresh in the witness' memory and to
>> reflect that knowledge correctly.  If admitted, the

16

> memorandum or record may be read into evidence
> but may not itself be received as an exhibit unless
> offered by an adverse party.
>
> To the extent Hatchett admitted making the specific
> statements, the requirements of MRE 803(5) were met.  The
> statement at issue pertained to an incident about which Hatchett
> once had knowledge, but at the time of trial had insufficient
> recollection.  As to the specific statements she admitted making,
> the testimony establishes that the statement reflects her knowledge
> correctly.  Hatchett also testified that her statement was true when
> it was given to the police.  [Footnote omitted.]  Defendant does not
> challenge the "freshness" requirement.  Thus, to the extent
> Hatchett admitted that the statement was her earlier truthful
> statement to police, the court properly permitted the statement to
> be read and treated as substantive evidence under MRE 803(5).
> The fact that Hatchett's trial testimony may have been inconsistent
> with certain portions of her statement to the police does not affect
> this conclusion.  Any inconsistencies go to the evidentiary weight
> the statement should be accorded, not its admissibility.  *People v.
> Daniels*, 192 Mich App 658, 699; 482 NW2d 176 (1991).
>
> However, to the extent that Hatchett did not admit, or could
> not recall, making certain statements to the police, defendant
> correctly argues that the statement was not properly read to the
> jury as substantive evidence under MRE 803(5).  The prosecutor
> should have brought in the police officer to testify that the
> statement as written represented Hatchett's verbatim account to
> him.
>
> We conclude, nevertheless, that reversal is not required.
> The prosecutor only read into evidence the portion of the statement
> regarding which he had already examined Hatchett.  And, as to the
> most damaging portions of the statement, in which Hatchett said
> that defendant said he had "got" the victim and killed the victim,
> Hatchett admitted making the specific statements and that the
> specific statements were true when made.

*Richey*, No. 221306, 2001 WL 1463705, slip op. at 1-2.

An issue concerning the admissibility of evidence or error in state procedure does not rise

to a level of constitutional magnitude unless it can be viewed as so egregious that the petitioner

was denied a fundamentally fair trial. *McAdoo v. Elo*, 365 F.3d 487, 494 (6th Cir.), *cert. denied*, 125 S.Ct. 126 (2004). To determine whether the admission or inadmissibility of evidence has denied a defendant's fundamental due process rights, the court should consider the extent to which the evidence is "critical" to the case, whether it "tend[s] to exculpate" the accused, and whether the evidence bears "persuasive assurances of trustworthiness." *Turpin v. Kassulke*, 26 F.3d 1392, 1396 (6th Cir. 1994) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 297 and 302 (1973)).

To the extent a petitioner's argument is based upon state law, Petitioner has failed to state a claim upon which habeas corpus relief may be granted. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). State court rulings on the admissibility of evidence generally fall outside the scope of federal habeas relief, which is designed only to remedy violations of federal law. *See* 28 U.S.C. § 2254(a); *Burgett v. Texas*, 389 U.S. 109, 113-14 (1967). A question concerning a perceived error of state law serves as a basis for habeas corpus relief only when a petitioner is denied fundamental fairness in the trial process. *Estelle*, 502 U.S. at 67-68. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." *Id.* at 68.

In the present case, Ms. Hatchett's statement that was admitted concerning Petitioner's involvement in the homicide was material, critical, and relevant to the prosecution's case. This Court agrees with the decision of the Michigan Court of Appeals and finds that Petitioner has not shown that the admission of Ms. Hatchett's statement was improper or deprived him of a fair trial.

Because the state court adjudications were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, or an unreasonable determination of

18

the facts, Petitioner is denied habeas relief on this claim.

C.

Petitioner next alleges that trial counsel was ineffective for various reasons. Specifically, Petitioner alleges that trial counsel was ineffective (1) in failing to challenge the admissibility of Jimavis Hatchett's testimony, which should have been suppressed because it was the fruit of an unlawful arrest, (2) in failing to challenge the legality of [Petitioner's] arrest, and (3) in failing to challenge the undue delay in Petitioner's arraignment. These claims have not been raised before and are therefore procedurally defaulted. Federal habeas review is barred where a state court declined to address a prisoner's federal claims because the prisoner failed to meet state procedural requirements. In such cases, the state court judgment rests on independent and adequate state procedural grounds. *Coleman v. Thompson*, 501 U.S. 722, 750-751 (1991); *Harris v. Reed*, 489 U.S. 255 (1989); *Wainwright v. Sykes*, 433 U.S. 72 (1977). Petitioner raised these claims for the first time in his motion for relief from judgment.

For a claim to be procedurally defaulted on the basis of a state procedural rule, the petitioner must have violated a procedural rule and the state court must have also based its decision on the procedural default. *Simpson v. Jones*, 238 F.3d 399 (6th Cir. 2000). If a state prisoner defaults his federal claims in state court in a decision based on an independent and adequate state procedural rule, those claims cannot be viewed in a habeas proceeding. *Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998). In order for the procedural default doctrine to apply, the last state court rendering a judgment in the case must have based its judgment on the procedural default. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).

Here, the Michigan Court of Appeals and Michigan Supreme Court, the last state courts

19

rendering judgments in this case, based their decisions to deny Petitioner's applications for leave to appeal the trial court's denial of his motion for relief from judgment on Petitioner's failure to comply with M.C.R. 6.508(D). Since the Michigan Court of Appeals and the Michigan Supreme Court were the last state courts rendering judgments in this case, their decisions denying Petitioner's claims on the basis of a state procedural bar prevents federal habeas review. *Simpson*, 238 F.3d at 407.

A federal habeas petitioner who fails to comply with a state's procedural rules waives his right to federal habeas review absent a showing of cause for noncompliance and some showing of actual prejudice resulting from the alleged constitutional violation or some showing of a fundamental miscarriage of justice. *Gravely v. Mills*, 87 F.3d 779, 784-785 (6th Cir. 1996). The petitioner has the burden of showing cause and prejudice to overcome a procedural default. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir. 1999).

Here, in his third claim, Petitioner attempts to establish cause to excuse his procedural default by stating that his appellate counsel was ineffective for failing to raise these claims in his direct appeal. Attorney error will not constitute adequate cause to excuse a procedural default unless it amounts to constitutionally ineffective assistance of counsel under the criteria established in *Strickland v. Washington*, 466 U.S. 668, 687 (1984). A comparable test applies to claims of ineffective assistance of appellate counsel. *See Smith v. Jago*, 888 F.2d 399, 405 n. 1 (6th Cir. 1989).

With respect to the performance prong of the *Strickland* test, a petitioner must identify acts that were "outside the wide range of professionally competent assistance" in order to prove deficient performance. *Strickland*, 466 U.S. at 690. The reviewing court's scrutiny of counsel's

20

performance is highly deferential. *Id.* at 689. The court must recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Id.* at 690.

To satisfy the prejudice prong under *Strickland*, a petitioner must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. A reasonable probability is one that is sufficient to undermine confidence in the outcome. *Id.* "On balance, the benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." *McQueen v. Scroggy*, 99 F.3d 1302, 1311-12 (6th Cir. 1996) (quoting *Strickland*, 466 U.S. at 686).

The mere failure to raise a claim, even if it is meritorious on appeal, does not constitute ineffective assistance of appellate counsel sufficient to establish cause to excuse a procedural default. *Rust v. Zent*, 17 F.3d 155 (6th Cir. 1994). The United States Supreme Court, in *Smith v. Robbins*, 520 U.S. 259 (2000), stated, among other things:

> In *Jones v. Barnes*, 463 U.S. 745 (1983) [parallel citations omitted], we held that appellate counsel who filed a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal. Notwithstanding *Barnes*, it is still possible to bring a *Strickland* claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate that counsel was incompetent. See, e.g., *Gray v. Greer*, 800 F.2d 644, 646 (C.A. 7 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")

*Smith v. Robbins*, *supra* at 288; *See also McMeans v. Brigano*, 228 F.3d 674 (6th Cir. 2000)

21

(where claim was not "dead bang winner," the petitioner's appellate counsel's failure to raise it on direct appeal did not constitute cause to excuse procedural default).

In this case, the record reveals that various issues were raised in Petitioner's direct appeal, but that Petitioner's convictions were affirmed.  Petitioner fails to demonstrate that the issues that were allegedly ignored by his appellate counsel in his direct appeal were clearly stronger than those that were presented, and he has failed to overcome the strong presumption that his counsel was competent.  *Strickland*, 466 U.S. at 690-94.

Since Petitioner has failed to establish cause for his procedural default, there is no need to determine whether Petitioner can meet the prejudice prong of the "cause and prejudice" test. *Smith v. Murray*, 477 U.S. 527 (1986); *Long v. McKeen*, 722 F.2d 286 (6th Cir. 1983).  Because Petitioner has failed to meet his burden of establishing cause and prejudice for his procedural default, and because he has failed to establish a showing of fundamental miscarriage of justice, the claim is not cognizable under federal habeas review.  Therefore, Petitioner is not entitled to habeas relief on his ineffective assistance of trial and appellate counsel claims.

However, even if not defaulted, Petitioner would not be entitled to relief due to his failure to make a factual record for his claims.

Petitioner cites *Kimmelman v. Morrison*, 477 U.S. 365 (1986) to support his position that habeas relief may be predicated on an attorney's ineffectiveness for failing to raise a meritorious Fourth Amendment claim.  The *Kimmelman* Court outlined the requirements for such a claim as follows:

> In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064, and that there exists a reasonable probability that, but for counsel's unprofessional

22

> errors, the result of the proceeding would have been different. *Id.*
> at 694, 104 S.Ct. at 2068. Where defense counsel's failure to
> litigate a Fourth Amendment claim competently is the principal
> allegation of ineffectiveness, the defendant must also prove that his
> Fourth Amendment claim is meritorious and that there is a
> reasonable probability that the verdict would have been different
> absent the excludable evidence in order to demonstrate actual
> prejudice.

*Kimmelman*, 477 U.S. at 375.

In his argument, Petitioner makes numerous factual statements that are not supported in the existing record. For example, Petitioner claims that he was held without probable cause for three days, and, as a result, the identity of Jimavis Hatchett was discovered and a statement taken. Therefore, Petitioner contends that Ms. Hatchett's statement was the "fruit of the poisonous tree" of his illegal arrest. The Court finds that there is no support for that contention in the record. Moreover, Petitioner admits that he has failed to present proofs to the state courts on the merits of his search and seizure claim. Pursuant to the habeas statute, that admitted failure bars consideration of those claims in this federal habeas proceeding. 28 U.S.C. § 2254 (e)(2). Hence, because Petitioner has failed to create a factual record, these claims would not be reviewable by this Court, even if not defaulted.

Therefore, the Court finds that, because the state court adjudications were neither contrary to, nor an unreasonable application of, clearly established Supreme Court precedent, or an unreasonable determination of the facts, Petitioner is denied habeas relief on these claims.

23

IV.

The state court decisions in this case were not contrary to federal law, an unreasonable application of federal law, or an unreasonable determination of the facts.  Petitioner has not established that he is presently in custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.


s/Gerald E. Rosen_____
Chief Judge, United States District Court

Dated:  February 18, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on February 18, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry_____
Case Manager

24